**ORIGINAL**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **GREGORY WAYNE WALLIS,** | § |
| | § |
| **Plaintiff.** | § |
| | § Civil Action No.: _____ |
| | § |
| **vs.** | § **JURY TRIAL DEMANDED** |
| | § |
| | § |
| **THE CITY OF IRVING; FRED CURTIS,** | § |
| **in his individual and official capacity;** | § |
| **HAROLD RENFROE, in his individual** | § |
| **and official capacity; JASON NEAL,** | § |
| **in his individual and official capacity;** | § |
| **JOHN DOE, in his individual and** | § |
| **official capacity; LEASA LILES, in her** | § |
| **individual capacity; and DANIEL** | § |
| **HAGOOD,** | § |
| | § |
| **Defendants.** | § |



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 3 0 2007
CLERK, U.S. DISTRICT COURT
By _____
Deputy

**3-07CV1483-K**

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiff, GREGORY WAYNE WALLIS, by and through his counsel,

Kevin Glasheen, of Glasheen, Valles & Dehoyos, L.L.P., complaining against defendants, and

alleges as follows:

### NATURE OF THE ACTION

1.   This is a civil rights and malicious prosecution action for money damages arising

under the Constitution of the United States, particularly the Fourth, Fifth, Sixth, Eighth, and

Fourteenth Amendments to the Constitution of the United States, under the laws of the United

States, particularly the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the laws of the

State of Texas, resulting from the wrongful imprisonment, prosecution, and conviction of

Gregory Wayne Wallis, as a result of the conduct of the Irving Police Department, its police officers, employees, and agents, and Daniel Hagood and Leasa Liles.

2.  Beyond compensating Mr. Wallis for these continuing injuries and the nearly eighteen years stolen from him, this actions seeks to redress the unlawful municipal policies and practices pursuant to which Defendants, acting under color of law both independently and in concert, violated his clearly established rights as guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the State of Texas.

## DEMAND FOR A JURY TRIAL

3.  Plaintiff demands a jury trial.

## JURISDICTION

4.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

## VENUE

5.  Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Northern District of Texas, Dallas Division, the judicial district in which the claims arose and in which the municipal defendant is located.

## PARTIES

6.  Plaintiff GREGORY WAYNE WALLIS is, and at all times material to this Complaint was, a resident of the State of Texas.  He remains a resident of Texas and resides in Irving,

Texas.

7. Defendant FRED CURTIS was, at all times material to this Complaint, an investigator and officer of the Defendant CITY OF IRVING. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Irving, Texas.

8. Defendant HAROLD RENFROE was, at all times material to this Complaint, an investigator and officer of the Defendant CITY OF IRVING. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Bedford, Texas.

9. Defendant LEASA LILES was, at all times material to this Complaint, an investigator employed by the District Attorney of Dallas County. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. She remains a resident of Texas and resides in Garland, Texas.

10. Defendant DANIEL HAGOOD was, at all times material to this Complaint, an assistant district attorney employed by the Dallas County District Attorney's office. Furthermore, Defendant is, and at all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Dallas, Texas.

11. Defendant JASON NEAL was, at all times material to this Complaint, an officer employed by the Defendant CITY OF IRVING. Furthermore, Defendant is, and all times material to this Complaint was, a resident of the State of Texas. He remains a resident of Texas and resides in Dallas, Texas.

12. Defendant JOHN DOE was, at all times material to this Complaint, an officer employed by the Defendant CITY OF IRVING. Furthermore, Defendant is, and all times

material to this Complaint was, a resident of the State of Texas.

13. Defendant CITY OF IRVING is incorporated as a municipality and, at all times material to this Complaint, was the public employer of FRED CURTIS, HAROLD RENFROE, JASON NEAL, and JOHN DOE.

## CONDITIONS PRECEDENT

14. All conditions precedent have been performed or have occurred.

## FACTS

15. At all times relevant to the acts alleged in this complaint, Defendants Fred Curtis, Harold Renfroe, Jason Neal, John Doe, and Leasa Liles were acting under the color of the statutes, ordinances, regulations, customs, and usages of the Defendant City of Irving and the State of Texas and under the authority of their respective offices as police officers.

16. At all times relevant to the acts alleged in this complaint, Defendant Daniel Hagood was acting under the color of the statutes, ordinances, regulations, customs, and usages of the County of Dallas and the State of Texas and under the authority of his respective office as an assistant district attorney.

17. Plaintiff Gregory Wallis served 17 years, 9 months, and 23 days in jail and prison for crimes which he did not commit.

18. On May 26, 1988, Mr. Wallis was arrested for burglary of a habitation and aggravated sexual assault and on April 20, 1989, he was convicted and subsequently sentenced to fifty years in prison.

19. At about 9:00 P.M. on the evening of January 6, 1988, MM opened the door of her

condominium to a banging. A man then pushed his way inside her apartment and began to assault her. After forcing MM to turn out the lights and disconnecting the phones, the attacker forced her to her bedroom where he sexually assaulted her several times.

20. The entire episode of subsequent assaults lasted several hours. During this time, MM attempted to distract her attacker by engaging him in conversation. The man replied to many of her questions, made several statements about his background, and indicated that he had been watching her for some time previous to this night. At one point during the ordeal, MM was able to convince her attacker to allow her access to the bathroom where she had the opportunity to see several tattoos on her attacker's body. In addition, the man smoked several cigarettes and drank a soft drink MM had retrieved for him from her refrigerator.

21. After her attacker left, MM called the police. Arriving shortly after the first officer on the scene, Investigator Michaels of the Irving Police Department began questioning MM and was assigned the investigation of the incident. MM described her attacker and the events surrounding the assault to Investigator Michaels. She also pointed out to Michaels several objects with which her attacker had come into contact. Michaels directed other officers present to proceed with collection of evidence and MM was transported to the hospital.

22. Shortly after the incident, Defendant Curtis worked with MM to develop a composite sketch of her attacker, as well as the tattoo she found to be most memorable. MM was able to describe the tattoo in great detail and, as a result, the police sketch artist was able to complete this composite. According to MM's description of the tattoo in the hours immediately following her attack, the composite sketch positively placed a tattoo of a woman's head, on the back left shoulder of the attacker, with the hair of the woman flowing down the rear of the attacker's left arm.

23.  In addition to obtaining the composite sketches, Investigator Michaels also had MM sit down and describe in detail the attack while Investigator Michaels recorded the interview on an audio tape.  Investigator Michaels also had MM write out a detailed description of the attack. These were the only detailed statements of MM taken prior to trial.

24.  Within two days after the attack on MM, Investigator Michaels had discovered that a maintenance man working at MM's condominium complex had a tattoo on his back left shoulder very similar to the one described by MM and that this man closely resembled the composite sketch of the attacker.  David Scott Baccus was subsequently arrested and his picture was placed in a line-up.  MM was unable to identify him.

25.  Over the next three months, Investigator Michaels continued to pursue each and every lead.  Using the statements made by the attacker to MM, Michaels tracked down and questioned several suspects.  After MM's stolen purse was recovered, he questioned several people in connection to its recovery.  During this time, Investigator Michaels conducted three more picture line-ups for MM to view.  She was unable to identify her attacker.

26.  Soon after the investigation had begun, another Irving Police Officer approached Investigator Michaels and showed him a picture of Plaintiff Gregory Wallis.  According to Michaels, he quickly ruled out Mr. Wallis as a possible suspect given that Gregory Wallis' tattoo was not similar to the tattoo of MM's attacker.  Instead of being located on his back, as MM has described, Wallis had a tattoo of a woman running down the front of his left arm.  He had another dissimilar tattoo in the location where MM had placed the tattoo of the woman on her attacker.

27.  In April, Investigator Michaels left the Irving Police Department.  Shortly before his departure, he completed a final lengthy supplementary report in the investigation into MM's

assault. This final report detailed the various suspects he questioned and the line-ups he conducted. While Gregory Wallis' name was not mentioned directly in this report, Michaels ended this report by writing: "There have been several other names come up but at this point nothing to relate them to the offense. A notebook has been compiled with all this information and will be kept in my file." This notebook was never turned over to the prosecutors during the prosecution of Gregory Wallis, and thus was never revealed to the defense.

28. After Investigator Michaels left, Defendant Curtis—who had helped prepare the composite sketches—and Defendant Renfroe took over responsibility for the investigation. These Defendants had access to Investigator Michaels' file related to his investigation of MM's attacker.

29. Sometime thereafter, Defendants Daniel Hagood, a Dallas County prosecutor, and Leasa Liles became involved in the investigation of the crime. These defendants arranged to meet MM at her condominium to go over her recollection now at least four months after the attack. During this interview, Defendants Hagood and Liles suggested to MM that she, perhaps, was remembering the events of that evening incorrectly. They suggested to her that the attacker's tattoo was not as she had described it in the hours immediately following the attack. They suggested to MM that the tattoo of the woman was not on the man's back with her hair going down the back of his arm, but that the tattoo had actually been—like Greg Wallis' tattoo— entirely on the front of his left arm, instead. MM, months after the attack, changed her story to reflect Defendants Hagood and Liles' suggestions.

30. After the production of the composite sketches, posters had been placed in the county jail facilities seeking information on the person portrayed. Between this time and his subsequent arrest for the assault of MM, Gregory Wallis spent a short amount of time in these facilities. For



several months, including the time Mr. Wallis spent there, no one identified Gregory Wallis as the person pictured in the composite sketches. Then, in late May of 1988, Defendant Renfroe alleged that a confidential informant contacted him and gave him Gregory Wallis' name as a possible suspect based upon the composites. Defendant Renfroe claimed that this was the first time he had heard Gregory Wallis' name mentioned in connection to this investigation.

31. According to Defendant Renfroe, he then obtained a picture of Gregory Wallis on May 25, 1988, and placed it in a photo line-up at which time MM identified Mr. Wallis. On the same day, Defendants Renfroe and Curtis submitted the unidentified latent fingerprints obtained from a soft drink can used by MM's attacker, along with a set of Gregory Wallis' prints, to the Dallas County Sheriff for comparison.

32. The following day, May 26, 1988, Defendants Curtis and Renfroe arrested Mr. Wallis at his home. Contrary to the claims of Defendants Curtis and Renfroe at trial, when told what the charges were against him, Mr. Wallis simply replied: "You've got the wrong man!" After Mr. Wallis was informed of the date of the offense, he explained to the Defendants that he had been at home with his wife that evening like every evening during that period of time.

33. After his arrest, Gregory Wallis was only questioned for a short few minutes. Asked if he knew MM, Mr. Wallis truthfully answered that he did not. During questioning, Mr. Wallis requested a physical line-up be conducted. This request was ignored. He also requested he be allowed to take a polygraph to prove his innocence. To this, the Defendants responded: "A polygraph isn't admissible, so why should we bother giving you a test?"

34. Following the brief questioning, Gregory Wallis was taken before a magistrate for arraignment. At the arraignment, Mr. Wallis was advised of his right to counsel. Gregory Wallis requested counsel be appointed at that time but his request went unaddressed.

35.  On May 27, 1988, an affidavit seeking *habeas capias* was prepared by Officer J. Myers based upon the information given her by Defendants Renfroe and Curtis. This affidavit was both deliberately incomplete and contained misinformation. Officer Myers describes the attacker's tattoo as MM did following the attack—as being on the attacker's left shoulder blade and flowing down the arm. But then Officer Myers, upon the information of Defendants Renfroe and Curtis, wrongly states that Gregory Wallis' tattoo matched. Furthermore, on May 27, 1988, the Dallas County Sheriff's Department reported back that the latent prints of MM's attacker taken from the scene did not match Gregory Wallis. This information was not included in the submitted affidavit and the magistrate based his probable cause determination off of deliberately faulty information.

36.  Gregory Wallis spent at least three months sitting in a Dallas county jail cell without being given access to an attorney. Finally, an inmate helped Mr. Wallis prepare a handwritten petition to have counsel appointed. It would be another nearly 30 days before he was visited by an attorney.

37.  The first attorney to visit Gregory Wallis brought an offer that if Mr. Wallis would plead guilty, he would receive thirty years in prison. He rejected this offer. On his second visit with counsel—this time a new attorney—he rejected other offers of 15 and 10 years based upon his confidence and knowledge of his innocence.

38.  At trial, testimony was offered by MM that—contrary to her remembrances immediately after and during the first four months after the attack—her attacker's tattoo was on the front of his left arm. Additionally, Defendants Curtis and Renfroe testified that they were unaware Gregory Wallis had been suggested as a possible suspect to Investigator Michaels early in his investigation and that Michaels had concluded Mr. Wallis was not involved. Defendants

Curtis and Renfroe also falsely testified that, without notifying Gregory Wallis of the date of the offense alleged, Mr. Wallis had volunteered his alibi.

39. By the time of trial, the audio tape made by Investigator Michaels of MM's statement only contained a brief description of the first few minutes of the attack. Additionally, the written statement of MM had disappeared completely. Aside from the composite sketch of the tattoo prepared with Defendant Curtis' help, no record remained of MM's early statements regarding the tattoo and under what conditions she witnessed it. MM's audio statement now ended abruptly during its telling and the tape was recorded over by Christmas music.

40. Neither Gregory Wallis, nor his attorney, were notified of the suggestive actions of Defendants Hagood and Liles that led to MM changing her remembrances regarding the tattoo and leading to her identification of Mr. Wallis, and ultimately, his conviction. Furthermore, Investigator Michaels notebook, which contained information related to those individuals like Mr. Wallis that Michaels had considered but ruled out, was not given to the prosecution, to Mr. Wallis, or to his attorney. This information would have impeached the testimony of Defendants Curtis and Renfroe regarding their knowledge of Investigator Michael's previous work on the case.

41. On April 20, 1989, Gregory Wallis was convicted of burglary of a habitation with intent to commit a sexual assault and sentenced to 50 years in prison.

42. Gregory Wallis' arrest, detention, prosecution, conviction, and imprisonment in 1988 and 1989 were the product of unconstitutional and unlawful efforts by Defendants Fred Curtis, Harold Renfroe, Leasa Liles, and Daniel Hagood, acting individually and in concert, pursuant to municipal policy and custom, to use any means necessary to gain a conviction against a man the officers and Daniel Hagood knew was innocent. Acting individually and in concert, the

Defendants deliberately failed to reveal exculpatory information, employed irreparably suggestive identification procedures, and fabricated evidence from a witness which was then presented at trial.

43.    While in prison, Gregory Wallis suffered several injuries. While working with razor wire, his thumb was sliced open for which a scar remains. Mr. Wallis currently suffers from three bone spurs which a prison physician told him were the result of severe head trauma suffered while incarcerated. Treatment for the bone spurs was minimal during the last seven years of his imprisonment and amounted to no more than minimal medication to help with pain.

44.    Additionally, Mr. Wallis suffered no less than 6 concussions while incarcerated for a crime which he did not commit. After the second concussion, Mr. Wallis started developing speech problems and migraine headaches. Subsequent to the third concussion, he began to notice the development of a shorter attention span and difficulty concentrating. The fourth concussion brought with it severe problems with his equilibrium that lasted about six weeks. His treatment for all of these concussions was minimal and inadequate. Finally, after suffering a sixth concussion, Gregory Wallis was knocked unconscious and did not wake up for 16 days. When he finally regained consciousness, he was responsible for teaching himself how to walk again without any medical help. He remained in the infirmary for about six to eight weeks following this concussion and as soon as he was mobile, he was immediately placed back into the general prison population.

45.    On April 23, 2004, Mr. Wallis filed a Motion for DNA testing and analysis of available biological evidence. The resulting testing and analysis could not conclusively establish that Mr. Wallis was innocent. Given these results, however, he was offered a deal that would have freed him from prison but required he register as a sex offender. But, confident of his

innocence, Mr. Wallis rejected the offer and February 14, 2006, a trial court ordered new DNA testing take place.

46. The resulting testing and analysis the second time established that Gregory Wallis had been wrongfully convicted. Mr. Wallis became a free man on Tuesday, March 21, 2006.

47. On January 10, 2007, the Texas Court of Criminal Appeals granted Mr. Wallis' writ of habeas corpus based upon his complete exoneration. As a result, all charges were dismissed against Mr. Wallis based upon his actual innocence.

48. Since Gregory Wallis' release on March 21, 2006, he has been the target of harassment by the City of Irving Police Department.

49. On February 24, 2007, Mr. Wallis sat in his parked car in the private parking lot in front of his apartment listening to the radio when Defendants Jason Neal and John Doe approached and ordered Mr. Wallis to step out of his car. Defendants Neal and Doe had allegedly responded to a call of a DWI at the apartment complex when they detained Mr. Wallis in his parked car. Without administering a field sobriety test, Defendants Neal and Doe placed Mr. Wallis under arrest for DWI and transported him to the police station.

50. Gregory Wallis was subsequently arraigned on DWI charges and placed in a jail cell. He spent one night in jail before being released on bond.

51. According to the caller who had reported the alleged DWI, the driver had collided with another car. Defendant Neal has testified that upon arrival and investigation, he found no evidence a collision had occurred and the owner of the vehicle that had allegedly been hit refused to file a report.

52. During his arrest for DWI, Lydia Wallis, Mr. Wallis' wife, walked out of their apartment to speak with Defendant Neal. When she was notified that Mr. Wallis would be

arrested, Lydia Wallis requested the Defendant give her the keys to the car. Defendant Neal refused. Instead, Defendant Neal had the Wallis' car impounded. Gregory and Lydia Wallis were deprived of use of the vehicle and, as a result of the impound, had to pay money to regain possession of the property.

53. On June 12, 2007, a hearing was conducted before Administrative Law Judge Brenda Coleman in Dallas County, Texas, in the case of Texas Department of Public Safety vs. Gregory Wayne Wallis to determine whether Mr. Wallis' driver's license should be revoked. On June 13, 2007, Administrative Law Judge Coleman issued an order denying the Department's petition. According to her findings, the ALJ held that the evidence presented—namely the sworn report and testimony of Defendant Neal—was insufficient to establish by a preponderance of the evidence a necessary element. Judge Coleman found that Defendant Neal lacked reasonable suspicion to stop Gregory Wallis on the DWI charge.

54. As a direct result of all Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Gregory Wallis sustained injuries and damages, including, among others, the following: personal injuries, pain and suffering, severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression.

**COUNT I – 42 U.S.C § 1983**
**(14th Amendment Due Process)**

55. Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

56.   As described more fully above, Defendants, while acting under color of law and within the scope of their employment, violated Plaintiff's right to Due Process by:

      A.   Impermissibly manipulating identification evidence later presented as evidence against, and used to convict, the innocent Plaintiff;

      B.   Concealing, destroying, and/or intentionally failing to disclose information which would have constituted powerful exculpatory evidence and/or impeachment of testimonial evidence in violation of their duty to report all material exculpatory and impeachment information.

57.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

58.   As a direct and proximate result of the misconduct described in this Count, MM misidentified Gregory Wallis as her attacker in court at his trial, otherwise inadmissible evidence was presented at trial, and the Plaintiff was wrongfully convicted of the crime of burglary of a habitation with intent to commit a sexual assault.

### COUNT II – 42 U.S.C. § 1983
### (4th Amendment Malicious Prosecution Claim)

59.   Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

60.   Plaintiff was improperly subjected to criminal proceedings for which there was no probable cause.   The prosecution of these proceedings was initiated or procured by the Defendants.   In order to accomplish the denial of Plaintiff's constitutional rights, Defendants destroyed and/or concealed evidence, impermissibly manipulated identification evidence by utilizing overtly suggestive techniques with a witness, and concealed and intentionally failed to disclose information which would have provided powerful exculpatory and impeachment

information with the swearing out and filing of a deliberately incomplete and false affidavit.

61.  These proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor when Plaintiff was adjudged actually innocent of all charges.

62.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

63.  As a direct and proximate result of the misconduct described in this Count, the Plaintiff suffered and continues to suffer injuries including emotional distress, loss of liberty, and the other grievous and permanent injuries and damages set forth above.

**COUNT III – 42 U.S.C. § 1983
(4th Amendment False Arrest/False Imprisonment Claim
Against Defendants Neal and Doe)**

64.  Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

65.  On February 24, 2007, Plaintiff was seized, arrested, placed into a police car, and incarcerated despite Defendants Neal and Doe's knowledge that there was no probable cause for doing so.

66.  Defendants actions set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

67.  As a direct and proximate result of the misconduct described in this Count, Plaintiff has suffered loss of liberty, continued harassment, and economic losses insofar as he has had to retain counsel to represent him in these matters.

## COUNT IV – 42 U.S.C. § 1983
### (4th Amendment Illegal Seizure Claim)

68.  Plaintiff realleges paragraphs 1 through 55 and 65 through 68 as though fully set forth herein.

69.  On February 24, 2007, Plaintiff's property was unreasonably and unjustifiably seized despite Defendants Neal and Doe's lack of a warrant allowing for the seizure, lack of probable cause a crime had been committed, and lack of reasonable belief the seizure was permissible.

70.  Plaintiff had a possessory interest in his vehicle, which was legally and appropriately parked on private property in front of his apartment when seized by Defendants Neal and Doe.

71.  Defendants actions set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

72.  As a direct and proximate result of the misconduct described in this Count, Plaintiff has suffered economic loss and hardship, as well as interference in his possessory rights in his personal property.

## COUNT V – 42 U.S.C. § 1983
### (*Monell* Claim Against the City of Irving)

73.  Plaintiff realleges paragraphs 1 through 73 as though fully set forth herein.

74.  The City of Irving, by and through its policymakers, created and maintained a custom, policy, or practice of deliberate indifference to the constitutional rights of citizens, by failing to adequately train and supervise and discipline its police officers, including the individual defendants in this case, to ensure that they:

    A.  Employed proper and non-suggestive identification techniques;

    B.  Faithfully represented material facts when seeking arrest warrants;

C.  Disclosed material exculpatory and impeachment information;

D.  Faithfully conducted permissible seizures that would not violate the rights of citizens;

E.  Made honest and faithful determinations of reasonable suspicion and probable cause in the detention and arrest of citizens; and

F.  Refrained from making constitutionally impermissible seizures of private personal property for the purpose of harassment.

75.  The City of Irving's failure to train, discipline, and supervise its police officers adequately in these constitutional duties directly and proximately caused the Plaintiff to suffer constitutional deprivations, including his unfair trial, wrongful conviction, and the other grievous and permanent injuries and damages set forth above.

### COUNT VI – 42 U.S.C. § 1985(2)
### (Conspiracy Claim Against All Defendants)

76.  Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

77.  Defendant knowingly acted in concert under color of law to deprive Plaintiff of his constitutional rights and to obstruct the due course of justice.

78.  The misconduct of Defendants prevented the State from fully performing its own duties of ensuring the Plaintiff received a fair trial and the protections of the due process of the law.

79.  In furtherance of the conspiracy, Defendants committed overt acts of concealing and/or destroying evidence, committing and/or suborning perjury, and effecting the denial of Plaintiff's constitutional and due process rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

80.   As a direct and proximate result of the misconduct described in this Count, the Plaintiff suffered constitutional deprivations, including his unfair trial, wrongful conviction, and the other grievous and permanent injuries and damages set forth above.

### COUNT VI – State Law Claim
### (Intentional Infliction of Emotional Distress Against Defendant Officers in their Individual Capacities)

81.  Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

82.  The extreme and outrageous conduct of the individual Defendants as set forth above, which was intentional or reckless, proximately caused the Plaintiff severe emotional distress.

### COUNT VII – State Law Claim
### (Malicious Prosecution Against Defendant Officers in their Individual Capacities and Defendant Hagood)

83.  Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

84.  Plaintiff was improperly subjected to criminal proceedings for which there was no probable cause.  The prosecution of these proceedings was initiated or procured by the Defendants.  These proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor when Plaintiff was adjudged actually innocent of all charges.

85.   As a direct and proximate result of the misconduct described in this Count, the Plaintiff suffered and continues to suffer injuries including emotional distress, loss of liberty, and the other grievous and permanent injuries and damages set forth above.

## COUNT VIII – State Law Claim
### (Conversion of Personal Property Against Defendants Neal and Doe in their Individual Capacities)

86. Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

87. Plaintiff owned, possessed, and had the right to immediate possession of his Nissan Maxima, which is personal property.

88. Defendants Neal and Doe wrongfully exercised dominion and control over this vehicle when Defendants refused to allow Plaintiff to hand custody of the vehicle to his wife, Lydia Wallis, but Defendants had the vehicle towed and impounded instead. Defendants had no reasonable belief their exercise of dominion and control over the vehicle was justified under the laws of the State of Texas.

89. Plaintiff suffered economic damages for the loss of use of the vehicle as well as the cost of recovery of the property.


## COUNT IX – State Law Claim
### (Trespass to Chattels Against Defendants Neal and Doe in their Individual Capacities)

90. Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

91. Pleading additionally, and in the alternative, Plaintiff owned, possessed, and had the right to immediate possession of his Nissan Maxima, which is personal property.

92. Defendants Neal and Doe wrongfully exercised dominion and control over this vehicle when Defendants refused to allow Plaintiff to hand custody of the vehicle to his wife, Lydia Wallis, but Defendants had the vehicle towed and impounded instead. Defendants had no reasonable belief their exercise of dominion and control over the vehicle was justified under the laws of the State of Texas.

93.  Plaintiff suffered economic damages for the loss of use of the vehicle as well as the cost of recovery of the property.

### COUNT X – State Law Claim
### (Civil Conspiracy Against All Officers in their Individual Capacities and Daniel Hagood)

94.  Plaintiff realleges paragraphs 1 through 55 as though fully set forth herein.

95.  Each Defendant was a member of an agreement and combination of two or more persons, and the members of this combination had a meeting of the minds on the object or course of action.

96.  The object of this combination of two or more persons was to achieve an unlawful purpose of imprisoning an innocent man by unlawful means through the concealment and/or destruction of evidence, the suborning of perjury, and the denial of Plaintiff's constitutional and due process rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

97.  At least one of the members of this combination committed an unlawful, overt act to further the object or course of action by the concealment and/or destruction of evidence, the suborning of perjury, and the denial of Plaintiff's constitutional rights.

98.  The Plaintiff suffered injury as a proximate result of the wrongful acts.

### EXEMPLARY DAMAGES AGAINST ALL DEFENDANTS

99.  When viewed objectively from the standpoint of Defendants at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  In addition, Defendants were actually,

subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare to others which constitutes "gross neglect" pursuant to § 41.001(7)(B) TEXAS CIVIL PRACTICE AND REMEDIES CODE. Furthermore, Defendants acted with such gross indifference or reckless disregard for the rights of others as to amount to a wanton and willful action, which constitutes "malice" under Texas law. *Dahl v. Akin*, 645 S.W.2d 506, 515 (Tex.App.—Amarillo 1982), *aff'd*, 661 S.W.2d 917 (Tex. 1983). Therefore, pursuant to Section 26, Article XVI, Texas Constitution as defined by §41.003(b), TEXAS CIVIL PRACTICES AND REMEDIES CODE, Plaintiff Gregory Wallis seeks exemplary damages in an amount which is reasonable and just to the jury.

100.  As a direct, proximate, and producing result of Defendants' gross negligence and malice, Plaintiff Gregory Wallis is entitled to exemplary damages pursuant to Section 41.001 et. seq. of the TEXAS CIVIL PRACTICES AND REMEDIES CODE.

## ATTORNEY FEES

101.  It was necessary for Plaintiff to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## PRAYER FOR RELIEF

102.  For the reasons stated above, Plaintiff Gregory Wallis asks for judgment against Defendants for the following:

    A.  Actual Damages in an amount to be proved at trial;

    B.  Punitive damages in an amount deemed appropriate to punish those

Defendants lawfully susceptible to punitive damages;

      C.    Exemplary damages against all defendants as set forth above and as determined by the jury;

      D.  Prejudgment and postjudgment interest;

      E.  Costs of suit, including attorney fees; and

      F.  All other, further and different relief as this Court deems just and proper.

**DATED this** ___24th___ **day of** ___August___ **, 2007.**

Respectfully Submitted,

By: _____

GLASHEEN, VALLES, & DEHOYOS, L.L.P.
KEVIN GLASHEEN
State Bar No. 08001510
1302 Texas Ave. (79401)
P.O. Box 1976
Lubbock, Texas 79408
Telephone:  (806) 741-0284
Facsimile:  (806) 763-2146

ATTORNEYS FOR THE PLAINTIFFS

JS 44
(Rev 3/99)

ORIGINAL

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Wallis, Gregory W.

## DEFENDANTS

City of Irving          Liles, Leasa
Curtis, Fred            Hagood, Daniel
Renfroe, Harold         Neal, Jason
Doe, John

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Dallas
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Dallas
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
        TRACT OF LAND INVOLVED.

3-07CV1483-K

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Glasheen, Valles, & Dehoyos, L.L.P.
Kevin Glasheen, Attorney of Record
P.O. Box 1976    Lubbock, Texas 79408
(806) 741-0284

ATTORNEYS (IF KNOWN)

RECEIVED

AUG 3 0 2007

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)   NORTHERN DISTRICT OF TEXAS   AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation

Appeal to District Judge from
- ☐ 7 Magistrate Judgment

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. Sec. 1983. This is a civil rights and malicious prosecution action for money damages arising under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States resulting from the wrongful imprisonment, prosecution, and conviction of Gregory Wayne Wallis.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   8/15/07

SIGNATURE OF ATTORNEY OF RECORD   Kevin Glasheen

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____